FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 14, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VIJUVE INC., a Florida corporation,<br><br>     Plaintiff,<br><br>     v.<br><br>KASPIEN INC., a Washington corporation,<br><br>     Defendant. | No. 2:21-CV-00192-SAB<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** |

Before the Court are Plaintiff's Motion for Partial Summary Judgment as to Liability, ECF No. 28, and Defendant's Motion to Strike, ECF No. 72. The Court held a hearing on the motions by videoconference on October 3, 2022. Defendant was represented by Charles Hausberg and Zaine Yzaguirre, who both appeared by video—Mr. Hausberg presented on behalf of Defendant. Plaintiff/Counterclaim Defendant was represented by Jesse Mondry, who appeared by video.

The Court took the motions under advisement. Having considered the briefing, the caselaw, and the parties' arguments, the Court denies Plaintiff's Motion for Partial Summary Judgment and dismisses Defendant's Motion to Strike as moot.

//

//

//

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT # 1**

**Facts**

The following facts are drawn from the parties' respective Statements of Material Facts, ECF Nos. 30, 51, and are construed in the light most favorable to Defendant.

Plaintiff, Vijuve Inc. is a company that sells skincare products. Defendant, Kaspien Inc. is an e-commerce company, helping companies provide products to customers through online marketplaces, direct websites, and brick and mortar stores.

Vijuve and Kaspien (formerly known as "etailz") first entered into a contractual agreement on June 6, 2018. The parties agreed that Kaspien would have the exclusive right to market and sell Vijuve's Anti-Aging Face Massager ("Massager") and Serum ("Serum") products on Amazon.

On September 1, 2020, Adeel Imrani, the co-founder of Vijuve, emailed Kunal Chopra, the CEO of Kaspien. In Mr. Imrani's email, he stated that Vijuve had "recently worked on evaluating over 20 months of partnership with etailz," ECF No. 54-1 at 2. Mr. Irani noted that, though the partnership had been going well overall, "since these past few months, our sales were not on the levels like the end of 2019." *Id.* Mr. Imrani noted several factors that Vijuve believed had contributed to the decline in sales and stated that he had "a proposition to make to etailz, in which etailz and VIJUVE can profit mutually and remarkably." *Id.* Specifically, Mr. Imrani proposed that Vijuve would (1) commit to Kaspien being the sole BUY BOX seller of the Massager and Serum on Amazon; (2) "implement the marketing tactics by pushing traffic from our curated audience via social media channels and our email lists"; and (3) "spend on launching strategies to give sales a solid further lift." *Id.* at 3. In return, Mr. Imrani requested that Kaspien commit to a new formula for placing its purchase orders for Vijuve's Massagers and Serum that was based on the past two weeks' sales velocity.

The parties engaged in negotiations regarding Mr. Imrani's proposal from

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 2

September 1 to September 18, 2020. As part of these negotiations, Vijuve and Kaspien discussed what marketing tactics Vijuve would use to increase sales of the products. Kaspien alleges that, during these negotiations, Mr. Imrani stated that Vijuve's marketing plans involved advertisements on social media as well as to individuals on Vijuve's email list. However, Kaspien alleges that Mr. Imrani never mentioned that Vijuve planned on offering any rebates or refunds as part of its marketing plan, let alone doing so on a widespread basis.

On September 18, 2020, Vijuve and Kaspien executed their Retail Partnership and Addendum agreement ("Contract"), formalizing their agreement. The parties agreed to the following terms in the Contract, which are relevant to the present dispute.

First, Kaspien was subject to a Minimum Order Commitment to Vijuve. Specifically, under the Minimum Order Commitment, if Kaspien's stock of Vijuve products was less than the last two weeks' sales velocity (which the Contract defined as confirmed orders plus pending orders), then Kaspien was required to place an order based on the previous two weeks' sales velocity.

Second, the Contract included a Marketing Budget provision, which stated: "The Parties agree to develop a mutually agreeable Amazon marketing plan . . . to be paid by Partner [Vijuve]. Partner must provide thirty (30) days advance written notice to terminate marketing services." However, the Contract did not provide any definition of "agreeable Amazon marketing plan."

Finally, the Contract included a Buy Back policy, laying out the circumstances under which Kaspien could return inventory to Vijuve. The policy stated that, if (1) a product did not trend as anticipated, thereby leading to stagnant inventory (*i.e.*, Kaspien holding onto a product for six months or longer) or (2) an additional Amazon seller entered a listing for an exclusive Vijuve product, then Vijuve "shall reimburse Kaspien at 100% of wholesale cost of such Returned Merchandise," including any removal fees and shipping.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 3

After the parties executed their Contract, Vijuve launched its first marketing campaign in the fall of 2020. Specifically, Vijuve contracted with Surkus, Inc., a third-party company, agreeing that—for a two-week period from September 28 to October 11, 2020— Surkus members would receive full reimbursements for approximately 1,000 Massagers and 500 Serums. Kaspien alleges that it did not know about the contract with Surkus or about Vijuve's plan to offer full reimbursements for these products. However, Kaspien does not dispute that (1) it was aware that Vijuve was engaged in marketing efforts at this time; and (2) based on the increased sales velocity, it encouraged Vijuve to engage in more promotional marketing activities.

On November 11, 2020, Vijuve told Kaspien that it intended to run another two-week marketing campaign from January 25 to February 7, 2021. Vijuve stated that its goal was to sell 3,000 Massagers and 1,500 Serums in those two weeks. However, Kaspien once again alleges that Vijuve failed to disclose that this marketing campaign would involve giving out 100% refunds for the specified quantity of product.

As a result of this marketing campaign, Kaspien's sales velocity once again increased. But this time, Kaspien alleges that both the amount and the speed of the increase began to cause concern—concern both about running out of stock and about the sustainability of the increased velocity. Thus, on or about January 25, 2021, Kaspien emailed Vijuve, requesting a phone call so that Kaspien could "better understand the marketing you are doing so that we can get a feel for the longevity of the performance."

Vijuve responded to Kaspien on January 25, 2021, explaining that Vijuve was doing "25% FREE GIVEAWAYS" as part of its marketing.[1] Kaspien alleges

---

[1] Kaspien alleges that this was still a misrepresentation, given the fact that Vijuve was offering 100% rebates during its two marketing campaigns.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 4

this was the first time Vijuve had disclosed its use of widespread rebates as part of its marketing tactics. Kaspien alleges that the only time that Vijuve had previously mentioned using "giveaways" was on a phone call in October 2020, after the first marketing campaign. But Kaspien alleges that, on this phone call, Vijuve stated that it was only offering an extremely limited number of giveaways to Amazon purchasers through limited email blasts to individuals on Vijuve's email list. Kaspien alleges that, after Vijuve's disclosure of its use of 25% free giveaways, this caused significant concern at the company and led to Kaspien's senior executives getting involved.

On February 1, 2021, while the second marketing campaign was ongoing, Vijuve sent Kaspien an email with numbers for Kaspien's next purchase order. Vijuve stated that, under the parties' contract, Kaspien was obligated to purchase a 4x multiplier of the sales velocity of the two-week campaign period. Vijuve stated that, based on the sales targets of 3,000 Massagers and 1,500 Serums, Kaspien's next purchase order would have to consist of 12,000 Massagers and 6,000 Serums, which totaled up to $774,000.

From February 1 to February 3, 2021, the parties engaged in email negotiations regarding Vijuve's proposed purchase order terms. ECF No. 52-10. From February 8 to 10, 2021, negotiations between the parties began to fray. ECF No. 57-1 at 6-11. Vijuve expressed concerns regarding Kaspien's delay in placing the purchase order and the impact of such a delay on Vijuve's relationships with its suppliers and marketing platforms. Meanwhile, Kaspien expressed concerns regarding (1) its willingness and ability to place such a large purchase order; and (2) Vijuve's ability to sell such a large amount of inventory and whether Vijuve would fulfill its buy-back obligations if not.

---

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 5

On February 10, 2021, Vijuve expressed that it was refusing to accept any terms other than the ones set out in the parties' initial Contract. *Id.* at 5. On February 12, 2021, Kaspien responded and requested adequate assurances that "Vijuve can meet its buy-back demands on such a larger order that is far greater than expectations, compounded with the required external marketing to generate the demand required." *Id.* Kaspien also requested that Vijuve provide, *inter alia*, (1) a clear explanation of Vijuve's marketing strategy off the Amazon platform and how the strategy impacted Amazon sales; (2) assurance that Vijuve would keep implementing the marketing strategy to support such a large sales velocity; and (3) an irrevocable letter of credit with a reputable financial institution that Kaspien would have authority to access in order to satisfy Vijuve's buy-back obligations if Vijuve failed to complete the buy-back or, alternatively, that Vijuve put up collateral of sufficient value to cover the buy-back. *Id.* at 4.

On February 13, 2021, Vijuve responded and agreed to provide Kaspien its requested assurances. *Id.* at 3. On February 15, 2021, Vijuve sent Kaspien the documents supporting the requested assurances. *Id.* at 2. On February 16, 2021, Kaspien confirmed receipt of the provided documentation and asked some follow-up questions, including about Vijuve's marketing strategy. *Id.* However, Kaspien did ask any follow-up questions regarding Vijuve's use of either rebates or giveaways. *Id.* Kaspien states that this is because the marketing strategy Vijuve disclosed in response to the request for assurances still did not clearly disclose its use of 100% rebates for all products sold during the marketing campaigns. Specifically, in the "VIJUVE Marketing for Kaspien Partnership (CONFIDENTIAL)" document that Vijuve provided to Kaspien, Vijuve represented that (1) only 25% of its units were sold by using rebates; and (2) described its use of rebates only as using "Amazon recommended rebates apps to generate discounted sales at Amazon." ECF No. 56-1 at 21. Based on the materials submitted into the record, it does not appear that Vijuve responded to Kaspien's

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 6

follow-up questions. Instead, it appears that the next communication between the parties was a letter Vijuve's counsel sent to Kaspien's counsel dated February 24, 2021. In the letter, counsel for Vijuve stated that he had "been retained to represent Vijuve Inc with regard to your client's breach of the exclusive retail contract." ECF No. 52-11. Counsel for Vijuve also stated "this result is the product of your client's demand for additional terms to the contract (line of credit) has been rejected. At this time my client is not willing to proceed further with the contract. Should you have any authority to resolve the issues or make financial concessions I remain available to negotiate those terms. Keep in mind that my client is owed Hundreds of Thousands of Dollars due to the breach." *Id.*

Kaspien states that it would not have agreed to the Minimum Order Commitment in the Contract had it known that Vijuve's marketing strategy would involve giving away thousands of products for free. Kaspien states that such a strategy would not only force it to place purchase orders for large amounts of product that were only "selling" on account of 100% rebates, but would also potentially jeopardize Kaspien's Amazon account, which is the foundation of Kaspien's business.[2]

### Procedural History

Vijuve filed its Complaint against Kaspien on June 18, 2021. ECF No. 1. Vijuve alleged a breach of contract claim based on Kaspien's failure to pay under the Minimum Order Commitment. Vijuve requested $774,000 in actual damages, as well as interest and other fees and costs. Kaspien filed its Answer on July 19, 2021, which asserted counterclaims against Vijuve. ECF No. 7. Specifically, Kaspien alleged a breach of contract and violation of the covenant of good faith and fair dealing claim against Vijuve based on its various breaches. Kaspien also

---

[2] Kaspien states that it is its understanding that large-scale full rebate and refund programs potentially violate Amazon's policies and terms.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 7

alleged a specific performance claim, requesting that Vijuve proceed under the buyback policy and pay Kaspien for its remaining Vijuve products.

Vijuve filed its Motion to Dismiss Kaspien's Counterclaims on August 6, 2021. ECF No. 12. Kaspien filed its Motion for Judgment on the Pleadings on September 1, 2021. ECF No. 15. The Court held a hearing on the motions on October 29, 2021 in Spokane, Washington and took them under advisement. On November 3, 2021, the Court issued an Order Denying Motions. Specifically, the Court denied Vijuve's Motion to Dismiss because there were factual disputes between the parties as to which one breached first and "[a]t the motion to dismiss stage, the Court must accept Kaspien's allegations as true and construe any factual disputes in the light most favorable to it." ECF No. 21 at 7-8. As for Kaspien's Motion for Judgment on the Pleadings, the Court found that Vijuve had plausibly alleged a breach of contract claim and that "further factual development in the record is needed regarding the Contract, the Consequential Damages waiver, and the claim regarding damages." *Id.* at 10.

After deciding the motions, the Court then held a scheduling conference with the parties on December 16, 2021. ECF No. 26. The Court set a jury trial date of February 21, 2023 in Spokane, Washington.

On January 29, 2021, barely a week after the scheduling conference, Vijuve filed the present Motion for Partial Summary Judgment. ECF No. 28. In response to the motion, Kaspien filed a Motion to Defer Consideration of Vijuve's Motion to Allow for Discovery. ECF No. 32. Kaspien argued that the Court should defer on ruling on the motion until the parties were able to engage in discovery regarding their respective claims and defenses.

The Court held a status conference with the parties on January 18, 2022, to discuss Kaspien's request. ECF No. 35. At the status conference and in a subsequent Order, the Court stated that it would stay consideration of Vijuve's motion to allow the parties to engage in discovery. ECF Nos. 35, 36. The Court

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 8

1  also set another status conference with the parties six weeks out to discuss the
2  parties' discovery progress. *Id.*

3      On March 15, 2022, the Court held another status conference with the
4  parties. ECF No. 38. At the status conference, the parties reported that they were
5  making progress on discovery but needed more time to complete it. Thus, the
6  Court reset the parties' briefing deadlines for Vijuve's Motion for Partial Summary
7  Judgment and set the hearing without oral argument for August 19, 2022. ECF No.
8  39. On July 1, 2022, Kaspien filed a Motion for Leave to File Amended Answer,
9  Affirmative Defenses, and Counterclaims. ECF No. 46. Specifically, Kaspien
10 stated that it wanted to add an affirmative defense of fraud, counterclaims against
11 Vijuve for fraud and negligent misrepresentation, and additional details to support
12 its existing breach of contract counterclaim. On July 8, 2022, the parties refiled
13 Kaspien's Motion for Leave to Amend as a stipulated motion—thus, the Court
14 granted the motion on July 13, 2022. ECF No. 59. Kaspien thus filed its Amended
15 Answer and Counterclaims on July 18, 2022. ECF No. 61.

16     On July 19, 2022, the parties filed a Stipulated Motion to Extend Deadlines.
17 ECF No. 62. However, because the parties' request to extend deadlines wanted to
18 extend the discovery and dispositive motion deadlines, but did not want to move
19 the trial date, the Court set a status conference with the parties for August 2, 2022.
20 ECF No. 63. At the status conference, the Court explained its policy of not moving
21 the dispositive motion and discovery deadlines without moving the associated trial
22 date—after learning this information, the parties stipulated and agreed to keep the
23 current deadlines. ECF Nos. 65, 66.

24     Thus, the parties continued to submit their briefing regarding Vijuve's
25 Motion for Partial Summary Judgment. On August 5, 2022, Vijuve submitted its
26 reply in support of its motion, as well as accompanying declarations and a Reply
27 Statement of Undisputed Facts. ECF Nos. 68, 69, 70, 71. However, on August 19,
28 2022, Kaspien filed a Motion to Strike (1) the Declaration of Adeel Imrani and all

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT,
DISMISSING MOTION TO STRIKE AS MOOT # 9**

attached exhibits in support of Vijuve's reply brief, ECF No. 69; (2) the Declaration of Jihee Ahn and all attached exhibits in support of Vijuve's reply brief, ECF No. 70; (3) "all aspects of Vijuve's Reply Brief (ECF No. 68) that reference, rely on, or cite the new evidence contained in/attached to the aforementioned declarations"; and (4) "all aspects of Vijuve's Reply Statement of Material Facts Not in Dispute (ECF No. 71) that reference, rely on, or cite the new evidence contained in/attached to the aforementioned declarations." ECF No. 72.

### Plaintiff Vijuve's Motion for Partial Summary Judgment as to Liability

Vijuve argues the Court should grant its motion and find Kaspien liable for breach of contract. Specifically, Vijuve argues that Kaspien breached its obligations under the parties' contract when it refused to make its purchase order of $774,000. Additionally, Vijuve argues that Kaspien's asserted defenses— (1) that Vijuve breached the contract first; and (2) that Kaspien was excused from performance due to Vijuve's failure to disclose promotional marketing activities, pay an outstanding marketing invoice, and provide proof of insurance—fail.

Kaspien in response argues the Court should deny Vijuve's motion due to genuine disputes of material fact regarding Vijuve's breach of contract claim. Specifically, Kaspien argues that—viewing the facts in the light most favorable to it as the non-moving party—there are genuine disputes of material fact regarding (1) whether Vijuve first committed material breaches of the contract; (2) whether Vijuve committed fraud; and (3) whether Vijuve failed and refused to provide adequate assurances to Kaspien.

Vijuve in reply argues there are no genuine disputes of material fact regarding whether Kaspien breached the contract. Vijuve argues there are also no genuine disputes of material fact regarding Kaspien's asserted defenses because (1) Kaspien knew about Vijuve's marketing efforts; and (2) Kaspien breached the contract not because of any purported breach on Vijuve's part, but rather because

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 10

1  Kaspien lacked the resources to fulfill its contractual obligations and knew that its
2  lender would not advance the necessary funds.

3                                        **Legal Standard**

4          Summary judgment is appropriate "if the movant shows that there is no
5  genuine dispute as to any material fact and the movant is entitled to judgment as a
6  matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless
7  there is sufficient evidence favoring the non-moving party for a jury to return a
8  verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250
9  (1986). The moving party has the initial burden of showing the absence of a
10 genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
11 If the moving party meets its initial burden, the non-moving party must go beyond
12 the pleadings and "set forth specific facts showing that there is a genuine issue for
13 trial." *Anderson*, 477 U.S. at 248.

14         In addition to showing there are no questions of material fact, the moving
15 party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of*
16 *Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled
17 to judgment as a matter of law when the non-moving party fails to make a
18 sufficient showing on an essential element of a claim on which the non-moving
19 party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party
20 cannot rely on conclusory allegations alone to create an issue of material fact.
21 *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

22         When considering a motion for summary judgment, a court may neither
23 weigh the evidence nor assess credibility; instead, "the evidence of the non-movant
24 is to be believed, and all justifiable inferences are to be drawn in his favor."
25 *Anderson*, 477 U.S. at 255.

26 //
27 //
28 //

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT,**
**DISMISSING MOTION TO STRIKE AS MOOT** # 11

## Discussion

### Plaintiff's Motion for Partial Summary Judgment as to Liability

There are too many genuine disputes of material fact for summary judgment to be appropriate at this time. Construing the facts in the light most favorable to Kaspien, Kaspien has created disputes of material fact regarding whether (1) Vijuve breached first by violating the Amazon marketing plan clause under the contract; (2) Vijuve committed fraud and/or misrepresentation in failing to disclose its use of rebates; and (3) when the breach of contract actually occurred and/or which was the first breaching party. Thus, the Court denies Plaintiff's Motion for Partial Summary Judgment as to Liability.

### Defendant Kaspien's Motion to Strike

Kaspien requests that the Court strike Vijuve's reply brief in support of its Motion for Partial Summary Judgment, along with any associated filings (*i.e.*, the declarations and the statement of material facts) because these documents contain newly and improperly submitted evidence, which is prohibited on reply. It asserts "the Court should not condone Vijuve's improper gamesmanship" and requests that the Court strike all of Vijuve's reply materials.

Vijuve in response argues that it has not submitted any new evidence, but rather is just responding and rebutting Kaspien's affirmative defenses, which is permissible.

Since the Court did not rely on Vijuve's reply materials to find genuine disputes of material fact, the Court dismisses Defendant's Motion to Strike as moot.

//
//
//
//
//

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 12

Accordingly, **IT IS HEREBY ORDERED:**

1.      Plaintiff's Motion for Partial Summary Judgment as to Liability, ECF No. 28, is **DENIED**.

2.      Defendant's Motion to Strike, ECF No. 72, is **DISMISSED as moot**.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order and provide copies to counsel.

**DATED** this 14th day of October 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING MOTION TO STRIKE AS MOOT** # 13